**FILED**

DEC 2 0 2004

LARRY W. PROPES, CLERK
FLORENCE, SC

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| CONTINENTAL CASUALTY COMPANY, )<br><br>Plaintiff, )<br><br>vs. )<br><br>GEORGE T. SAMAHA, III, CAROLYN )<br>HILLS, VICTORIA DOUGHERTY, AND )<br>MICHAEL DOUGHERTY, )<br><br>Defendants. ) | Case No.: 4:04-1782-27 |

**CONTINENTAL CASUALTY COMPANY'S MEMORANDUM
IN OPPOSITION TO MOTIONS TO DISMISS OF
DEFENDANT GEORGE T. SAMAHA, III AND DEFENDANTS
CAROLYN HILLS, VICTORIA DOUGHERTY, AND MICHAEL DOUGHERTY**

Plaintiff Continental Casualty Company ("Continental") hereby opposes the

Motions to Dismiss filed by Defendants Carolyn Hills, Victoria Dougherty, Michael

Dougherty and Defendant George T. Samaha, III, and respectfully requests that this

Court exercise jurisdiction over this action.

This action seeks a declaration that there is no coverage under a professional

liability insurance policy issued by Continental to Samaha for two lawsuits filed

against Samaha. In particular, Continental contends that no coverage is available

because Samaha had a basis to believe, prior to the inception of the policy, that an

act or omission in the performance of legal services might reasonably be expected

to be the basis of a claim against him. That single issue has been fully briefed by

the parties in connection with Continental's Motion for Judgment on the Pleadings

or, in the Alternative for Summary Judgment ("Continental's Motion"), and is pending

before this Court. In contrast, Continental is not a party to the actions brought against Samaha by Hills, Victoria Dougherty, and Michael Dougherty, who are claimants against Samaha in the underlying lawsuits pending in South Carolina state court (the "Non-insured Defendants"). The underlying lawsuits do not involve the issue of whether there is coverage under Continental's policy, nor is there any other lawsuit pending in state court involving that issue. Moreover, the issues relating to the claim in the underlying actions, *i.e.*, that Samaha acted improperly with respect to his representation of Francis P. McLure and Lillian McLure, are entirely separate and distinct from the single issue involved in this coverage action, *i.e.*, whether Samaha had knowledge that a claim might be made against him prior to the policy inception. Under these circumstances, it could not be more clear that the Court should exercise jurisdiction over this action, and that the Defendants' Motions should be denied.

## STATEMENT OF FACTS

Continental refers the Court to the detailed statement of facts set forth in Continental's memorandum in support of its Motion for Judgment on the Pleadings or, in the Alternative, for Summary Judgment, and here sets forth only the facts most pertinent to the Defendants' Motions.

Continental's Complaint seeks a declaration that Lawyers Professional Liability Policy No. 169861433, issued to Samaha for the period April 5, 2002 to April 5, 2003 (the "Policy"), provides no coverage for two lawsuits filed against Samaha by the Non-insured Defendants, on behalf of Lillian McLure, the Lillian McLure Irrevocable Trust (the "Trust"), and the Estate of Francis P. McLure (the "Estate"), because Samaha had a basis to believe, prior to the inception of the Policy, that an

2

act or omission in the performance of legal services for Mr. and Mrs. McLure might reasonably be expected to be the basis of a claim against him. It is Continental's position in this action that Samaha had reason to believe that a claim might be made against him based on a probate court hearing (which occurred prior to the Policy inception), at which counsel for the Estate charged Samaha with "gross impropriety" and "crooked" behavior, and the court's subsequent order (which was issued prior to the Policy inception).

A.    **The March 12, 2002 Probate Court Hearing And Subsequent Order**

Prompted by the filing by counsel for the Estate of a petition for administration of the Estate under the court's authority and for the appointment of a special administrator, the Probate Court for the Fifteenth Judicial Circuit for Horry County, South Carolina, held a hearing concerning the Estate, the Trust, and other matters relating to Mrs. McLure on March 12, 2002 (the "March 12 Hearing"). At the March 12 Hearing, counsel for the Estate accused Samaha of taking advantage of Mrs. McLure, an incapacitated widow, and taking a number of improper actions in connection with his representation of Mr. and Mrs. McLure. Subsequently, the probate court issued a written order finding that Samaha's testimony at the hearing was evasive and not credible and that Samaha had abused his power and intentionally put Mrs. McLure beyond the court's subpoena power; enjoining Samaha from taking any further actions affecting any assets of Mr. or Mrs. McLure; ordering that Samaha pay the fee he received from Mrs. McLure as a "marshalling charge" to the special administrator; and ordering that a copy of the order be sent to disciplinary counsel.

3

**B.    The Policy**

Subject to all of its terms and conditions, the Policy provides that Continental's duty to pay sums on behalf of its insureds is subject to the condition that:

> 3.    prior to the inception date of the first policy issued by the **Company** or any subsidiary or affiliate of the **Company**, if continuously renewed, or the date the **Insured** first became a member or employee of the **Named Insured**, whichever is later, no **Insured** had a basis to believe that any such act or omission, or **related act or omission**, might reasonably be expected to be the basis of a **claim**;
> . . . .

Policy (attached as Exhibit A to Continental's Motion), § I.A.

**C.    The *Hills* Actions**

In the months following the March 12 Hearing and the inception of the Policy, two lawsuits were filed against Samaha in connection with his representation of Mr. and Mrs. McLure.  On July 26, 2002, Carolyn Hills, in her capacities as special administrator for the Estate and co-guardian and co-conservators for Mrs. McClure, and Victoria Dougherty, in her capacities as co-guardian and co-conservator for Mrs. McClure, filed a lawsuit against Samaha, asserting causes of action for breach of fiduciary duty, negligence, fraud, negligent misrepresentation, violation of the South Carolina Unfair Trade Practices Act, constructive trust, and unjust enrichment (the "*Hills I* Action").  On November 5, 2003, Carolyn Hills and Victoria Dougherty, as co-guardians and co-conservators for Lillian McClure, and Victoria Dougherty and Michael J. Dougherty, as co-trustees of the Lillian McLure Irrevocable Trust, filed a lawsuit against Samaha, asserting causes of action for breach of fiduciary duty, negligence, constructive trust, and conversion (the "*Hills II* Action").  The *Hills I* and

*Hills II* actions (collectively, the "*Hills* Actions") have been consolidated and are scheduled to be ready for trial in February 2004.

## ARGUMENT

The Court should exercise jurisdiction over this action because a determination by this Court of the coverage issue raised by this action would serve the interests of all of the parties. A decision by this Court will settle the entire controversy between Continental and the Defendants and will inform all of the parties of their rights and obligations under the Policy. Allowing this action to proceed will result in the most efficient use of judicial resources because the coverage issue raised by this action is the subject of a dispositive motion that has been fully briefed and is pending before this Court. Significantly, the legal and factual issues involved in this action are completely distinct and separate from the issues involved in the *Hills* Actions and are not currently pending before any other court. Moreover, Continental's decision to file this action in federal court was appropriate and should be accorded deference.

## I.   THE *QUARLES*, *MITCHESON*, AND *NAUTILUS* FACTORS FAVOR EXERCISE OF JURISDICTION BY THIS COURT.

The Federal Declaratory Judgment Act empowers federal courts to "declare the rights and other legal relations of any interested party seeking such declaration" in any "case of actual controversy." 28 U.S.C. § 2201. As there is no question that this case presents an "actual controversy,"[1] and it is undisputed that there is

---

[1] *See Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 375 (4th Cir. 1994) ("A dispute between a liability insurer, its insured, and a third party with a tort claim against the insured over the extent of the insurer's responsibility for that claim is an 'actual controversy' within the meaning of the federal Declaratory Judgment Act.").

complete diversity between the Plaintiff and the Defendants, this Court undeniably has the power to entertain this action.

Moreover, it is well settled that insurance coverage actions are an entirely "appropriate use of the declaratory judgment mechanism," *United Capitol Insurance Co. v. Kapiloff*, 155 F.3d 488, 494 (4th Cir. 1998) (upholding district court's decision to retain jurisdiction over declaratory judgment action where parallel proceeding was pending in state court), and federal courts routinely proceed with such actions where tort lawsuits -- which are the subject of the coverage dispute in the declaratory judgment actions -- are pending simultaneously in state court. *See Penn-America Ins. Co. v. Coffey*, 368 F.3d 409, 414 (4th Cir. 2004) (reversing district court's decision to decline jurisdiction over declaratory judgment action where underlying personal injury action was pending in state court).

While a federal court has "some measure" of discretion as to whether to exercise jurisdiction over a declaratory judgment action, that discretion is "not unbounded," and a court may not decline jurisdiction out of "whim or personal disinclination" but, instead, may do so only for "good reason." *Nautilus*, 15 F.3d at 375. The Court of Appeals for the Fourth Circuit has held that a federal district court generally should exercise jurisdiction over a declaratory judgment action when: (i) it "will serve a useful purpose in clarifying and settling the legal relations in issue" and (ii) it "will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Id.* (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937)).

In addition to the principles set forth in *Quarles*, courts in the Fourth Circuit are guided by four specific factors in considering whether to proceed with the declaratory judgment action.  Those factors are:

(i)     the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;

(ii)    whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending;

(iii)   whether permitting the federal action to go forward would result in unnecessary "entanglement" between the federal and  state court systems, because of the presence of "overlapping issues of fact or law"; and

(iv)    whether the declaratory judgment action is being used merely as a device for "procedural fencing" -- that is, "to provide another forum in a race for res judicata" or "to achieve a federal hearing in a case otherwise not removable."

*See Nautilus*, 15 F.3d at 376-77; *Mitcheson v. Harris*, 955 F.2d 235, 237-40 (4th Cir. 1992).  As discussed more fully below, each of the principles and factors adopted by the Fourth Circuit supports a determination by this Court to exercise jurisdiction over this declaratory judgment action.

### A.     This Declaratory Judgment Action Will Serve A Useful Purpose In Clarifying And Settling The Legal Relations Between Continental And The Defendants

This declaratory judgment action *will* serve a useful purpose in determining whether Samaha had prior knowledge that a claim might be made against him prior to the inception of the Policy, which would preclude coverage under the Policy for the *Hills* Actions, and the Defendants concede as much.  *See* Defendants Carolyn Hills, Victoria Dougherty and Michael Dougherty's Memorandum of Law In Support

of Motion to Dismiss ("Hills Mem.") at 9, n.3 ("[a]pplying the Quarels' [sic] criteria to this case, Continental's Declaratory Judgment action would 'serve a useful purpose' only in clarifying the amount of insurance coverage available to Samaha"); Defendant George T. Samaha, III's Memorandum of Law In Support of Motion to Dismiss ("Samaha Mem.") at 8, n.3 (same).  Despite this concession, Defendants contend that this action does not meet the "useful purpose" criterion of *Quarles* because it will not adjudicate the liability or damages issues involved in the *Hills* Actions.

It is clear, however, that a declaratory judgment action need not resolve *all* of the legal relations between *all* of the parties in order to be "useful."  As the Fourth Circuit recognized in *Kapiloff*, "a declaratory judgment action would undoubtedly 'serve a useful purpose' in settling the disputed rights of [the insurer] and [the insureds] under the insurance policy." *Kapiloff*, 155 F.3d at 494; *see also Nautilus*, 15 F.3d at 377 (in reversing the district court's dismissal of the insurance coverage declaratory judgment action, court found that "[t]here is no question but that the declaratory relief sought would 'serve a useful purpose in clarifying and settling the legal relations in issue'").  Indeed, declaratory judgment actions are "designed to allay exactly the sort of uncertainty that flows from the threat that ambiguous contractual rights may be asserted." *Kapiloff*, 155 F.3d at 494; *First Fin. Ins. Co. v. Crossroads Lounge, Inc.*, 140 F. Supp. 2d 686, 693 (S.D. W. Va. 2001) (resolving insurance coverage issues before tort liability issues are resolved in state court "will be more helpful than harmful").  This declaratory judgment action is useful because it will provide the parties with important guidance as to their rights and obligations

8

under the Policy.   Accordingly, this consideration weighs in favor of this Court

retaining jurisdiction over this action.

**B.    This Declaratory Judgment Action Will Resolve The
Entire Controversy Between Continental And The Defendants
And Will Relieve All Of The Parties From Any Uncertainty
Regarding Coverage Under The Policy For The _Hills_ Actions.**

Similarly, a determination by this Court on the prior knowledge issue will

resolve the entire controversy raised by this action and relieve the parties from any

uncertainty relating to that issue.  The controversy here is simply whether Samaha

had prior knowledge that a claim might be made against him such that coverage

under the Policy for the _Hills_ Actions is precluded.   Prompt resolution of this

controversy benefits all of the parties:  Continental will learn whether it is obligated to

defend and potentially indemnify Samaha in the _Hills_ Actions, and the Defendants

will learn whether insurance coverage is available for those actions and be able to

develop their litigation strategies accordingly.

Defendants' contention that the Court should decline to exercise jurisdiction

over this action because a resolution of this action will not settle the issues involved

in the underlying _Hills_ Actions is misplaced.  _See_ Hills Mem. at 9, n.3; Samaha Mem.

at 8, n.3.  That argument is based on a misunderstanding of what constitutes the

"controversy" in this action.  Notably, the _Quarles_, _Mitcheson_, and _Nautilus_ factors

do not require that _all_ controversies among _all_ of the parties be determined in the

declaratory judgment action, but that the declaratory judgment action "settle the

controversy" at issue.

The relevant "controversy" for these purposes is the controversy between the

declaratory judgment plaintiff and the declaratory judgment defendants, _i.e._, the

9

question of insurance coverage. *See Crossroads*, 140 F. Supp. 2d at 692 ("where, as here, the questions presented by the declaratory judgment complaint circumscribe the entire controversy between the declaratory plaintiff and the declaratory defendants, *Quarles* will normally resolve in favor of retention of the federal action"). The claims made against Samaha in the *Hills* Actions will not be resolved by *this* action, but that is irrelevant. *See id.* at 693 (finding that the controversy between declaratory judgment plaintiff and declaratory judgment defendants "will not be tried 'piecemeal' without 'settling the entire controversy' between Plaintiff and Defendants if [the issues of coverage] are decided in this forum before the tort liability issues are resolved separately in state court"). Accepting Defendants' arguments would be tantamount to holding that a federal court never could entertain a declaratory judgment action seeking a determination as to insurance coverage because no such action ever would resolve the underlying claims against the insured. That is not the purpose of a declaratory judgment action. The "controversy" in this action is discrete and will be settled entirely by this declaratory judgment action.

## C.    South Carolina Has No Compelling Interest In Resolving The Coverage Issues Raised By This Declaratory Judgment Action.

Although this declaratory judgment action involves issues of state law, and South Carolina has an interest in applying its law, the state's interest must be "balanced . . . by an out-of-state party's interest in a federal forum." *Crossroads*, 140 F. Supp. 2d at 694; *see generally Mitcheson*, 955 F.2d at 237 ("[i]n the ordinary diversity case . . . there are paramount federal interests in having federal courts resolve questions of state law and accord protection to out-of-state parties").

10

Moreover, a state's interest in resolving a case is diminished where the state-law issues "are not novel, unsettled, difficult, complex, or otherwise problematic." *Crossroads*, 140 F. Supp. 2d. at 695; *Nautilus*, 15 F.3d at 378.

Here, as in *Kapiloff*, the state's interest in deciding this case is "not particularly significant." *See Kapiloff*, 155 F.3d at 494. This action involves standard issues of contract interpretation, and this Court "would be unlikely to break new ground or be faced with novel issues of state interest." *Id.* Even the issues of policy interpretation are minimal. The parties do not seriously disagree about the meaning of the Policy provisions at issue; rather, the parties disagree about the application of the relevant, undisputed facts to the Policy provisions. That is, the parties draw different conclusions about whether Samaha, given the facts known to him, had a basis to believe that a claim might be made against him in connection with his representation of the McLures. South Carolina does not have any particular interest in resolving that issue. In contrast, the coverage dispute in *Continental Casualty Co. v. Fuscardo*, 35 F.3d 963 (4th Cir. 1994), cited by Defendants, involved uninsured motorist insurance, about which public policy concerns heighten a state's interest in a state court applying its law. *See generally State v. Canady*, 475 S.E.2d 107, 111 (W. Va. 1996) (noting public policy concerns underlying statutorily-required uninsured motorist benefits).

Contrary to the Defendants' assertion, *see* Hills Mem., 10, South Carolina does not have a compelling interest in the issues raised by this action by virtue of the state's interest in overseeing attorney conduct. Simply put, Samaha's conduct is not at issue in -- and will not be resolved by -- this action. Likewise, the coverage

issue raised in this action is not being addressed by the underlying state-court actions. Accordingly, South Carolina has minimal interest in this Court declining to exercise jurisdiction over this action. *See Coffey*, 368 F.3d at 414 (holding that "to defer to the state court tort case . . . will not advance the State's interests significantly because (1) the contractual coverage issue will not be decided by the state tort case, and (2) [the insurer] is not a party to the state case").

### D. Resolution Of The Coverage Issue In This Action Will Be More Efficient Than Resolution In State Court.

Defendants fail to offer one coherent reason why it would be more efficient to resolve the coverage issue that is at the heart of this action in state court rather than in this Court. In fact, just the opposite is true. The coverage issue raised by this action is the subject of a dispositive motion that has been fully briefed by all of the parties. Thus, resolution of the issue is imminent. The coverage issue is not being litigated in the state-court actions, nor is Continental a party to the state-court litigation. In these circumstances, courts consistently hold that it in no way would serve judicial economy to abandon a federal declaratory judgment action in favor of an action yet to be filed in state court. *See Nautilus*, 15 F.3d at 379 (where insurance coverage issue was not raised in pending state actions and insurers whose policies were implicated by dispute were not parties to those actions, "we cannot say with any confidence that the issues raised in this federal declaratory action can better be resolved in [the state court] proceedings"); *Coffey*, 368 F.3d at 414 ("Because [the insurer] is not a party in the state action and it is not clear under Virginia rules that [the insurer] could intervene to have coverage issues decided

12

within the scope of the underlying tort case, dismissing the federal coverage case would not seem to advance any cause of efficiency.").

In *Fuscardo*, cited by Defendants in their memorandums, the critical fact relied upon by the court in determining that judicial efficiency weighed in favor of declining jurisdiction was *not* merely that a state action was pending at the time the federal declaratory judgment action was filed but that it was "inevitable" that the coverage issue would be raised in the state-court action. *Fuscardo*, 35 F.3d at 967. The court found that to be true because, pursuant to a West Virginia statute governing uninsured motorists claims, the insurer already had been served with a complaint in the state action as if it already were a party to the litigation. *Id.* Thus, the court found it to be only a technicality that at the time the federal action was filed, the insurer was not a party to the state action and the coverage issues were not being litigated in that action. *Id.*

The factual circumstances of the instant matter are entirely different. Here, Continental is not a party to the state actions, technically or otherwise, and it does not appear that Continental could be joined as a party in those actions. *See Major v. National Indem. Co.*, 229 S.E.2d 849, 850 (S.C. 1976) (noting that insurers may not be joined by claimants in actions against insureds, except where the liability insurance is compulsory); *Trancik v. USAA Ins. Co.*, 581 S.E.2d 858, 861 (S.C. Ct. App. 2003) ("injured person has no right of action at law against the insurer"); *Sarvis v. Register*, 341 S.E.2d 791, 792 (S.C. 1985) (existence of insurance should not be made known to jury in tort action); *Nautilus*, 15 F.3d at 379 (where none of the insurers "is formally a party to either of those [state] actions . . . [and] it is not clear to

us that the insurers can be brought into those actions at this point. . . . [W]e cannot say that the issues raised in this declaratory action can more efficiently be resolved in the pending state proceedings").   The sole issue raised by this action is the subject of a dispositive motion that has been fully briefed.  Contrary to Defendants' contention, *see* Hills Mem. at 12, this action is not duplicative of the state-court actions in any way.  In fact, and as discussed in more detail below, the federal and state actions involve completely separate issues.   Hence, it would be extremely *inefficient* to dismiss this action and force the parties to re-litigate the insurance coverage issue in a new action in state court.  *See Nautilus*, 15 F.3d at 379 ("It is difficult to imagine a less efficient use of judicial resources than dismissing this action on the eve of its trial and requiring the parties to start over again in a different court.").

## E.    Exercising Jurisdiction Over This Action Will Not Result In Unnecessary Entanglement Between The Federal And State Court Systems.

Under the weight of the indisputable fact that this declaratory judgment action and the underlying tort actions involve entirely separate and distinct issues, Defendants' argument that proceeding with this action will result in unnecessary "entanglement" between the federal and state court systems sinks like a stone.  As the case law in this context demonstrates, "entanglement" is generally not a factor weighing in favor of dismissing a federal declaratory judgment action because such actions typically involve different factual and legal issues.  *See id.* at 379-80 (finding that issues involved in declaratory judgment action and state-court tort actions are "quite different" and that "there is no significant overlap in the issues of fact that must be decided to resolve these two separate and independent legal controversies");

14

*Coffey*, 368 F.3d at 414 ("we conclude that the district court can address the coverage question . . . without becoming entangled in the tort issues"); *Fuscardo*, 35 F.3d at 968 ("the federal court's resolution of the issues on the instant case would not have resulted in unnecessary entanglement of the state and federal court systems. The personal injury tort issues that would be litigated . . . in state court are discrete from those issues involving insurance coverage").

Although insurance coverage issues *can* overlap with issues to be determined in the underlying tort case, this case is not one in which they do. For example, in *Mitcheson*, the question of when the injury that prompted the state-court tort action occurred was at issue in both the tort action and in the federal insurance coverage action. *Mitcheson*, 955 F.2d at 239. Nor is this a situation where a party in a state-court action has made a claim against the insurer directly. *See Centennial Life Ins. Co. v. Poston*, 88 F.3d 255 (4th Cir. 1996) (upholding dismissal of federal court declaratory judgment action in favor of state-court action seeing enforcement of policy and asserting separate and alternate claims against insurance agent).

The sole issue in this action is whether Samaha had prior knowledge that a claim might be made against him. As set forth in Continental's Motion, that issue can be resolved based on a review of the Policy language, the transcript of the March 12 Hearing, the March 19 Order, and relevant case law. This Court's determination on that issue is unrelated to any finding that Samaha is or is not liable for any of the allegations asserted against him in the *Hills* Actions. None of the issues identified by Defendants as pertaining to both the federal and state-court actions, *see* Hills Mem. at 14, need to be resolved in this action. As discussed in

Continental's Motion, "prior knowledge" issues are analyzed under an objective standard, *see* Continental's Motion at 13-16, making Samaha's state of mind and "understanding" of the March 12 Hearing irrelevant. Similarly, a determination as to whether an insured had prior knowledge that a claim might be made does not depend on the claim having merit. Thus, Samaha's "intent surrounding any breach of his fiduciary duties" and whether he knew that certain allegations contained in the complaint he filed against Ann McLure were false also are irrelevant and do not need to be determined to resolve this action.

F.    **The Filing of This Declaratory Judgment Action Was Entirely Appropriate And Was Not A Procedural "Fencing" Maneuver.**

Defendants contend that this action is "procedural fencing" or "forum shopping," primarily because jurisdiction here is based on diversity of citizenship. *See* Hills Mem., 15-17. Diversity jurisdiction serves important judicial goals, and the mere fact that this federal declaratory judgment action is predicated on diversity of citizenship is not a sufficient reason for the Court to decline jurisdiction. *See Meredith v. Winter Haven*, 320 U.S. 228, 234 (1943) (purpose of diversity jurisdiction is "generally to afford to suitors an opportunity in such cases, at their option, to assert their rights in the federal rather than in the state courts"). Indeed, a plaintiff's choice of forum is entitled to deference, and a plaintiff in federal court is not required to affirmatively demonstrate actual prejudice by a state court. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) ("[T]he plaintiff's choice of forum should rarely be disturbed."). Moreover, it is an appropriate and reasonable assertion of rights for an insurer to seek to resolve a coverage question in a federal declaratory judgment action under diversity jurisdiction. *See Kapiloff*, 155 F.3d at 494.

In any event, this action cannot be considered "procedural fencing" because the coverage issue is not pending in any other forum that Continental seeks to avoid by filing this action.    In *Nautilus*, the court found that the insurer's declaratory judgment action was not procedural fencing because

> this action was filed in an entirely proper effort to obtain prompt resolution of a dispute over a liability insurer's obligation to defend and indemnify its insured against certain tort claims then being pressed against it in state court – a dispute that was separate and independent from the ongoing litigation in then state courts, and particularly appropriate for early resolution in a declaratory action.

*Nautilus*, 15 F.3d at 380.  Similarly, here, Continental is not a party to the state court actions; it will not be bound by any determinations in the state court actions; and, it did not bring this action until after its investigation demonstrated that Samaha had prior knowledge that a claim might be made against him.[2]  Thus, Continental is

---

[2] Defendants badly misstate a number of facts in arguing that Continental's filing of this action constitutes procedural fencing.  For example, they falsely assert, as they also did in their oppositions to Continental's Motion, that "Continental has never raised the grounds on which it now seeks to deny coverage until filing this action almost two (2) years after defending Samaha in the State Court action." Hills Mem. at 15; Samaha Mem. at 14-15.  As discussed in Continental's reply brief in support of its Motion, at 3-4, Continental issued a coverage letter dated August 20, 2002, in which it provided specific notice of all of the potential coverage issues it was able to identify at that time, *including* the issue of Samaha's prior knowledge.  Continental consistently has provided a defense *subject to a reservation of its right to deny coverage.*  By continuing to provide a defense subject to a specific reservation of its rights, Continental acted in good faith to protect Samaha's interests in the litigation, while also putting Samaha on notice that it was preserving its right to deny coverage, based on Samaha's prior knowledge, if its investigation produced evidence that the claim in fact was barred from coverage for that reason.

Defendants also falsely assert that Continental has avoided certain discovery obligations in this action. Hills Mem. at 15; Samaha Mem. at 15.  As Defendants are well aware, Continental postponed initiating a Rule 26(f) conference, and its attendant report and disclosures, with Defendants' acquiescence (*see* Letter from J. Boone Aiken to Leigh T. Powers, Irby E. Walker, and Richard M. Smith dated August 10, 2004, attached hereto as Exhibit A), because the Court had not issued a preliminary scheduling order.  The parties conducted a Rule 26(f) conference on December 14, 2004 and agreed to exchange initial disclosures by February 7, 2005.  As show in Continental's reply brief in support of its

entitled to a determination from this Court that there is no coverage under the Policy for the *Hills* Actions. There is no reason why such an adjudication should or must take place in state court.

## CONCLUSION

For the foregoing reasons, this Court should exercise its discretion under the Declaratory Judgment Act to entertain this action. This action was properly filed in federal court, and there is no reasonable basis for the Court to decline jurisdiction. Therefore, Continental respectfully requests that the Court deny the motions to dismiss this action.

Respectfully submitted,

By: _____

December 20, 2004

J. Boone Aiken, III
Federal I.D. No. 269
Aiken, Bridges, Nunn, Elliott & Tyler, P.A.
181 East Evans Street
Suite 409
Florence, SC   29506
Phone: 843.669.8787
Fax:    843.664.0097

Richard A. Simpson
Amy Ledoux
(admitted pro hac vice)
ROSS, DIXON & BELL, LLP
2001 K Street, N.W.
Washington, D.C. 20006-1040
Telephone: (202) 662-2000
Facsimile: (202) 662-2190

*Counsel for Plaintiff*
*Continental Casualty Company*

---

Motion, at 4-8, discovery is unnecessary to resolution of the coverage issues presented by this matter. And, of course, the parties can take discovery if the Court determines it is necessary.

Civil Action No.: 4:04-1782-27

# EXHIBIT A

# Aiken
# Bridges
## Attorneys at Law

J. Boone Aiken, III •
Michael M. Nunn
Saunders M. Bridges, Jr. •+
E. Glenn Elliott •
Matthew N. Tyler •
Robert E. Lee ◊
James M. Saleeby, Jr.
J. David Banner
Samuel F. Arthur, III
Amy Anderson Wise
Charles L. McLain, III
Jay R. Lee

Of Counsel:
Saunders M. Bridges •

•Certified Mediator/Arbitrator
◊ Certified Arbitrator
+Also Admitted District of Columbia

JBA@AIKENBRIDGES.COM
843-669-8787, ext. 307
Facsimile: 843-664-0097

Alvin A. Coleman (1930-1995)

August 10, 2004

**VIA FACSIMILE – 843.546.0096**
Leigh T. Powers, Esquire
MCNAIR LAW FIRM, P.A.
P. O. Drawer 418
Georgetown, SC  29442

**VIA FACSIMILE – 843.248.8276**
Irby E. Walker, Jr., Esquire
P. O. Box 1138
Conway, SC  29528

**VIA FACSIMILE - 843.546.0096**
Richard M. Smith, Esquire
MCNAIR LAW FIRM, P.A.
P. O. Drawer 418
Georgetown, SC  29442

RE:    Continental Casualty Company vs. George T. Samaha, III, et al.
       C/A No.:  4:04-1782-27
       Our File No.:  22558

Dear Counsel:

Somewhat surprisingly, we have not received a Conference and Scheduling Order from the Court.  I suspect the reason is because of the recent transfer of this case to Judge R. Bryan Harwell.

The Answer of Mr. Samaha is due Monday, August 16, 2004.  It could be debated that we should schedule a 26(f) conference on or before August 16, but, in my view, this would be premature.  My thought is to revisit this issue in thirty (30) days and

Aiken, Bridges, Nunn, Elliott & Tyler, P.A.

181 East Evans St. Suite 409
Florence, South Carolina 29506

www.aikenbridges.com

Post Office Drawer 1931
Florence, South Carolina 29503



Aiken
Bridges
Attorneys at Law

August 10, 2004
Page 2

mutually decide if we should schedule a 26(f) conference even if the Conference and Scheduling Order has not been received by that time.

Please let me know if you agree with this suggestion.

Sincerely yours,

J. BOONE AIKEN, III

JBA,III/twd

cc:   **VIA FACSIMILE – 202.662.2190**
      Richard A. Simpson, Esquire
      Amy Ledoux, Esquire
      ROSS, DIXON & BELL, LLP
      2001 K Street, NW
      Washington, DC  20006-1040

# CERTIFICATE OF SERVICE

I, the undersigned employee of **Aiken, Bridges, Nunn, Elliott & Tyler, P.A.**, do hereby certify that the foregoing **CONTINENTAL CASUALTY COMPANY'S MEMORANDUM IN OPPOSITION TO MOTIONS TO DISMISS OF DEFENDANT GEORGE T. SAMAHA, III, AND DEFENDANTS CAROLYN HILLS, VICTORIA DOUGHERTY AND MICHAEL DOUGHERTY** has been served by mailing copies thereof, postage prepaid, to the following person(s), this 20th day of December, 2004:

Richard M. Smith, Esquire
Leigh T. Powers, Esquire
MCNAIR LAW FIRM, P.A.
P. O. Drawer 418
Georgetown, SC  29442

M. Mark McAdams, Esquire
MCNAIR LAW FIRM, P.A.
P. O. Box 336
Myrtle Beach, SC  29578

Irby E. Walker, Jr., Esquire
P. O. Box 1138
Conway, SC  29528

By: _Alicia N. Arnold_
ALICIA N. ARNOLD

(22558)